UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

STEPHEN DILL and                    *
ABIGAIL MARSTERS,                   *
                                    *
            Plaintiffs,             *
                                    *
      v.                            *        Civil Action No. 1:12-10202-JLT
                                    *
AMERICAN HOME MORTGAGE              *
SERVICING, Inc., and                *
DEUTSCHE BANK NATIONAL TRUST        *
COMPANY,                            *
                                    *
            Defendants.             *

MEMORANDUM

March 28, 2013

TAURO, J.

I.    Introduction

      Plaintiffs Stephen Dill and Abigail Marsters bring this suit against Defendants American

Home Mortgage Servicing, Inc. ("AHMSI") and Deutsche Bank National Trust Company

("Deutsche Bank") arising out of Plaintiffs' home mortgage loan.  Plaintiffs allege that AHMSI

mishandled Plaintiffs' loan modification application under the Home Affordable Modification

Program ("HAMP"), and misled Plaintiffs regarding the loan modification process.  AHMSI

moves to dismiss all counts of Plaintiffs' complaint.  For the reasons set forth below, AHMSI's

Motion to Dismiss [#7] is ALLOWED IN PART and DENIED IN PART.

II.   Factual Background[1]

---

[1] The court presents the facts contained in Plaintiffs' Complaint [#1] in the light most
favorable to Plaintiffs.  The court also properly considers the mortgage (Def.'s Ex. A) and
Servicer Participation Agreement (Def.'s Ex. C) as documents referenced in, and central to, the
Plaintiffs' complaint.  See Curran v. Cousins, 509 F.3d 36, 44 (1st Cir. 2007).

On November 27, 2006, Plaintiffs executed a note in the amount of $545,000 to American Home Mortgage ("AHM").[2]  That same day, Plaintiffs granted a mortgage to Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for the lender, AHM.[3]  Deutsche Bank claims to currently hold the mortgage, as Trustee for American Home Mortgage Asset Trust 2007-2.[4]  AHMSI is the current loan servicer.[5]

On July 22, 2009, AHMSI entered into a HAMP Servicer Participation Agreement ("SPA") with Fannie Mae, an agent of the federal government.[6]  The SPA incorporates by reference the HAMP Guidelines and Supplemental Directives.[7]

In 2010, Plaintiffs began experiencing difficulty making their mortgage payments.[8]  In November 2010, AHMSI notified Plaintiffs that they might be eligible for a loan modification under HAMP.[9]  Plaintiffs filled out an application for a HAMP loan modification in early December 2010.[10]  On December 30, 2010, Plaintiffs received a letter from AHMSI stating: "If you qualify under the federal government's Home Affordable Modification program and comply

---

[2] Def.'s Mot. to Dismiss Ex. A [#8-1].

[3] Def.'s Mot. to Dismiss Ex. A.

[4] Compl. ¶ 8.

[5] Compl. ¶ 7

[6] Compl. ¶ 22; Def.'s Mot. to Dismiss Ex. C [#8-1].

[7] Compl. ¶ 23.

[8] Compl. ¶ 26.

[9] Compl. ¶ 27.

[10] Compl. ¶ 27.

with the terms of the Home Affordable Modification Program Trial Period Plan, we will modify your loan and you can avoid foreclosure."[11]  The letter contained no references to the need for investor approval, any "caps" on the number of available modifications, or any other contingency besides eligibility and compliance with the trial period.[12]

AHSMI also informed Plaintiffs that it would not accept payments during the pendency of Plaintiffs' modification application.[13]  As a result, Plaintiffs did not make any further payments, causing them to fall further into default.[14]

On February 8, 2011, AHMSI acknowledged receipt of Plaintiffs' modification paperwork and informed Plaintiffs that they would review their application within thirty days.[15]  Five months later, on July 27, 2011, AHMSI sent a letter informing Plaintiffs that they were "ineligible" for a HAMP modification because "[AHMSI], as servicer, does not have appropriate contractual authority or any required consent from the owner of the Loan to agree to the HAMP modification."[16]  During this same time period, Deutsche Bank initiated foreclosure.[17]

On September 15, 2011, Plaintiffs sent a demand letter to Defendants pursuant to Mass.

---

[11] Compl. ¶ 28 (emphasis omitted).

[12] Compl. ¶¶ 29, 42.

[13] Compl. ¶ 30.

[14] Compl. ¶ 31.

[15] Compl. ¶ 33.

[16] Compl. ¶ 36.

[17] Compl. ¶ 39.

Gen. Laws ch. 93A.[18]  On December 8, 2011, AHMSI responded to Plaintiffs' demand letter by indicating that AHMSI denied Plaintiffs' application because the "cap" on the number of modifications for the investor pool had been reached.[19]

As a result of AHMSI's actions, Plaintiffs have suffered emotional distress and harm to their credit, reputations, and careers.[20]  Plaintiffs bring five counts against AHMSI, including (1) breach of contract/SPA, (2) breach of implied duty of good faith and fair dealing arising out of the mortgage, (3) negligence, (4) promissory estoppel, and (5) violation of Mass. Gen. Laws ch. 93A. AHMSI moves to dismiss all counts under Federal Rule of Civil Procedure 12(b)(6).

III.   Discussion

   A.   Legal Standard

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."[21]  The court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.[22]  The court need not, however, accept the plaintiff's legal conclusions as true.[23]  To survive a motion to dismiss, a complaint must contain sufficient factual matter "to state a claim for relief that is plausible on its face."[24]

---

[18] Compl. ¶ 40.

[19] Compl. ¶ 41.

[20] Compl. ¶ 43.

[21] Fed. R. Civ. P. 8(a)(2).

[22] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

[23] Id.

[24]  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

B.      Count I: Breach of Contract

In Count I, Plaintiffs bring a claim against AHMSI for breach of the SPA.  This claim fails

because Plaintiffs have not plausibly alleged standing to enforce the SPA.

To bring a claim for breach of contract, a litigant must be a party to or intended

beneficiary of the contract.[25]  It is undisputed that Plaintiffs are not parties to the SPA.  Plaintiffs

have also failed to allege sufficient facts to establish that they are intended beneficiaries of the

SPA.  The majority view in this district and others is that borrowers are not intended beneficiaries

of such contracts between loan servicers and the federal government absent a clear indication in

the contract to the contrary.[26]  The SPA at issue in this case does not evidence a clear intent to

give borrowers a right to enforce the contract.  Rather, paragraph 11(E) of the SPA clearly states

that "[t]he Agreement shall inure to the benefit of and be binding upon the parties to the

Agreement and their permitted successors-in-interest."[27]  Because Plaintiffs have not plausibly

alleged that they are intended beneficiaries of the SPA, Count I is dismissed.

C.      Count II: Breach of Implied Duty of Good Faith and Fair Dealing

In Count II, Plaintiffs claim that AHMSI breached the implied covenant of good faith and

fair dealing arising out of the mortgage.  This claim is dismissed because Plaintiffs fail to allege a

---

[25] Markle v. HSBC Mortg. Corp. (USA), 844 F. Supp. 2d 172, 180-81 (D. Mass. 2011).

[26] See Payton v. Wells Fargo Bank, No. 12-11540-DJC, 2013 WL 782601, at *2-3 (D. Mass. Feb. 28, 2013); Kirtz v. Wells Fargo Bank, No. 12-10690-DJC, 2012 WL 5989705, at *3 (D. Mass. Nov. 29, 2012); Seidel v. Wells Fargo Bank, No. 12-10766-RWZ, 2012 WL 2571200, at *3 (D. Mass. July 3, 2012) (collecting cases); see also Klamath Water Users Protective Ass'n v. Patterson, 204 F.3d 1206, 1211 (9th Cir. 1999) ("Parties that benefit from a government contract are generally assumed to be incidental beneficiaries, and may not enforce a contract absent a clear intent to the contrary." (citing Restatement (Second) of Contracts § 313(2))).

[27] Def.'s Mot. to Dismiss Ex. C.

plausible contractual relationship between AHMSI and Plaintiffs.

Every contract implies a covenant of good faith and fair dealing between the parties to it.[28] The covenant only "governs conduct of the parties after they have entered into a contract; without a contract, there is no covenant to be breached."[29]  Here, AHMSI owes no implied duties to Plaintiffs arising out of the mortgage contract because AHMSI is not a party to the mortgage. AHMSI also owes no implied duties to Plaintiffs arising out of the SPA because Plaintiffs have failed to plausibly allege that they are parties to or intended beneficiaries of the SPA.  In the absence of a contractual relationship between AHMSI and Plaintiffs, Count II is dismissed.[30]

D.       Count III: Negligence

Plaintiffs' Count III claim for ordinary negligence is barred by the economic loss doctrine. Under Massachusetts law, the economic loss doctrine bars recovery for ordinary negligence claims in the absence of personal injury or property damage.[31]  Here, Plaintiffs seek to recover for

---

[28] Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d 215, 230 (1st Cir. 2005).

[29] Id.

[30] In their opposition, Plaintiffs argue that AHMSI is liable because it acted as an agent of an undisclosed principal in relation to the mortgage.  Plaintiffs fail, however, to include this allegation in their complaint.  Rather, the complaint states that "[a]s a party to the Mortgage, Defendant owes Plaintiff a duty of good faith and fair dealing."  Compl. ¶ 54.  Even if Plaintiffs had alleged that AHMSI acted as an agent of an undisclosed principal in relation to the mortgage, AHMSI would still not be liable for its handling of Plaintiffs' modification application.  Plaintiffs have not alleged that the mortgage contract contains any duties related to modification.  See UNO Rests., Inc. v. Boston Kenmore Realty Corp., 805 N.E.2d 957, 964 (Mass. 2004) ("The covenant may not, however, create rights and duties not otherwise provided for in the existing contractual relationship, as the purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance.").

[31] FMR Corp. v. Boston Edison Co., 613 N.E.2d 902, 903 (Mass. 1993) (citing cases); Wyman v. Ayer Props., LLC, 979 N.E.2d 782, 787-88 (Mass. App. Ct. 2012).

economic losses but do not allege personal injury or property damage.

In their opposition, Plaintiffs argue that Count III properly states a claim for negligent misrepresentation, an exception to the economic loss doctrine.[32]  To prove negligent misrepresentation, Plaintiffs must show that AHMSI: "(1) in the ordinary course of business, (2) supplied false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others (5) by their justifiable reliance upon the information, and (6) that it failed to exercise reasonable care or competence in obtaining or communicating the information."[33]

The allegations in Plaintiffs' complaint are sufficient to state a claim that AHMSI negligently misrepresented the criteria for modification.[34]  Plaintiffs allege that AHMSI falsely represented to Plaintiffs that they would receive a modification if (1) they were eligible, and (2) they complied with the trial period.  Plaintiffs allege that AHMSI failed to inform them of additional criteria that would bar modification regardless of whether Plaintiffs were eligible and complied, such as "caps" on the number of available modifications.  Plaintiffs further allege that they relied on AHMSI's misleading statement of the criteria for modification by not making payments during the pendency of their application, causing them to fall further into default.  These

---

[32] See Nota Constr. Corp. v. Keyes Assocs., 694 N.E.2d 401, 405 (Mass. App. Ct. 1998) (citing Craig v. Everett M. Brooks Co., 222 N.E.2d 752, 754-55 (Mass. 1967)).

[33] Cummings v. HPG Int'l, Inc., 244 F.3d 16, 24 (1st Cir. 2001) (citing Fox v. F & J Gattozzi Corp., 672 N.E.2d 547, 551 (Mass. App. Ct. 1996)).

[34] That Count III is entitled "Negligence" and not "Negligent Misrepresentation" is not determinative.  It is the substance, rather than form, of the allegations that determines the nature of the claim.  Fernandes v. Havkin, 731 F. Supp. 2d 103, 121 n.12 (D. Mass. 2010) (citing cases).

allegations plausibly state a claim for negligent misrepresentation.[35]   As a result, Count III survives dismissal as a claim for negligent misrepresentation.

      E.    Count IV: Promissory Estoppel

     In Count IV, Plaintiffs bring a claim against AHMSI for promissory estoppel.  Plaintiffs allege that AHMSI promised to modify Plaintiffs' loan if they were eligible and complied with the trial period.  AHMSI moves to dismiss this Count on the ground that its alleged promise was too indefinite to give rise to a binding obligation.

     To establish a claim for promissory estoppel under Massachusetts law, a plaintiff must allege that "'(1) a promisor makes a promise which he should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee, (2) the promise does induce such action or forbearance, and (3) injustice can be avoided only by enforcement of the promise.'"[36]  A promise that is subject to a condition precedent may still be binding in promissory estoppel if the condition precedent has been met.[37]

     AHMSI allegedly made a promise to modify Plaintiffs' loan subject to the conditions precedent of Plaintiffs' eligibility and compliance.  Whether or not this alleged promise gave rise to a binding obligation under promissory estoppel turns on the meaning of the terms "eligibility"

---

[35] Whether AHMSI's December 30, 2010 letter misrepresented the criteria for modification hinges on the meaning of the terms "qualify" and "eligible" in this context.  The meaning of these terms is better determined at a later stage of this proceeding with reference to more materials on the record, such as the letter itself.

[36] Carroll v. Xerox Corp., 294 F.3d 231, 242 (1st Cir. 2002) (quoting Loranger Constr. Corp. v. E.F. Hauserman Co., 374 N.E.2d 306, 308 (Mass. App. Ct. 1978)).

[37] See e.g., In re Bank of Am. Home Affordable Mortg. Program (HAMP) Contract Litig., 10-02913-RWZ, 2011 WL 2637222, at *3-4 (D. Mass. July 6, 2011).

and "compliance" in this context and whether the conditions precedent were in fact met.  As with

Plaintiffs' negligent misrepresentation claim, these questions are better answered at a later stage

of litigation with reference to more materials on the record, such as AHMSI's letter to Plaintiffs.

At this stage, Plaintiffs sufficiently allege a promise.[38]  Plaintiffs also sufficiently allege reliance

and detriment.  In particular, Plaintiffs allege that they relied on AHSMI's promise by not

pursuing other alternatives to foreclosure and by not making payments during the pendency of

their modification application, resulting in foreclosure and harm to Plaintiffs' credit.[39]

Accordingly, dismissal is denied as to Count IV.

      F.    Count V: Mass. Gen. Laws ch. 93A, § 9

          i.    "Structural Unfairness" of the Loan Under Fremont

In Count V, Plaintiffs claim that AHMSI is liable under Chapter 93A because Plaintiffs'

loan is "structurally unfair" within the framework of Commonwealth v. Fremont Investment and

Loan[40] ("Fremont").  In Fremont, the Massachusetts Supreme Judicial Court held that Chapter

93A prohibits "the origination of a home mortgage loan that the lender should recognize at the

outset the borrower is not likely to be able to repay."[41]  Here, AHMSI did not originate Plaintiffs'

---

[38] See Kirtz v. Wells Fargo Bank, No. 12-10690-DJC, 2012 WL 5989705, at *7 (D. Mass. Nov. 29, 2012); Dixon v. Wells Fargo Bank, 798 F. Supp. 2d 336, 348 (D. Mass. Jul. 22, 2011); In re Bank of Am., 2011 WL 2637222, at *3-4.

[39] See Kirtz, 2012 WL 5989705, at *7; Dixon, 798 F. Supp. 2d at 346-48.

[40] 897 N.E.2d 548 (Mass. 2008).

[41] Frappier v. Countrywide Home Loans, Inc., 645 F.3d 51, 56 (1st Cir. 2011) (quoting Id. at 560).

loan and is therefore not liable under <u>Fremont</u>.[42]

Plaintiffs point to <u>McKensi v. Bank of America</u>[43] for the proposition that a bank may be liable under Chapter 93A for knowingly enforcing a structurally unfair loan through foreclosure. Whether or not this argument accurately states the law, Plaintiffs' claim still fails because Plaintiffs do not allege that AHMSI initiated foreclosure.  Rather, Plaintiffs allege that Deutsche Bank initiated foreclosure.[44]  Because Plaintiffs fail to allege AHMSI engaged in any "unfair or deceptive" conduct related to the structure of their loan, Plaintiffs' Chapter 93A claim against AHMSI based on <u>Fremont</u> is dismissed.

ii.       93A Claim: Violation of HAMP Guidelines

In Count V, Plaintiffs also claim that AHMSI engaged in unfair and deceptive conduct under Chapter 93A related to Plaintiffs' modification application.  Chapter 93A prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."[46]  Mere "technical violations" of HAMP and "clerical errors" are generally insufficient to support Chapter 93A claims.[47]  In contrast, courts have found conduct sufficiently unfair or deceptive where plaintiffs

---

[42] <u>See</u> <u>Serra v. Quantum Servicing Corp.</u>, No. 11-11843-DPW, 2012 WL 3548037, at *8 (D. Mass. Aug. 15, 2012); <u>Sulprizio v. MGC Mortg., Inc.</u>, No. 11-12186-RWZ, 2012 WL 904898, at *1 (D. Mass. Mar. 16, 2012); <u>Osser v. Little Loan Servicing, LP</u>, No. 09-01208-B, 2012 WL 4928874, at *6 (Mass. Super. Ct. Oct. 5, 2012).

[43] No. 09-11940-JGD, 2010 WL 3781841, at *3-4 (D. Mass. Sept. 22, 2010).

[44] Plaintiffs also fail to allege that AHMSI had knowledge of any defects in Plaintiffs' loan and knowingly enforced an unenforceable loan.  <u>See</u> <u>Figueroa v. Bank of Am.</u>, No. 12-11290-RWZ, 2012 WL 5921043, at *4 (D. Mass. Nov. 26, 2012).

[46] Mass. Gen. Laws ch. 93A, § 2.

[47] <u>Okoye v. Bank of New York Mellon</u>, No. 10-11563-DPW, 2011 WL 3269686, at *9 (D. Mass. July 28, 2011) (citing cases); <u>Morris v. BAC Home Loans Servicing, L.P.</u>, 775 F.

have alleged that defendants "misrepresented to plaintiffs the status of their HAMP application, their rights under HAMP, or their eligibility for a permanent loan modification . . . ."[48]

Here, Plaintiffs have sufficiently alleged that AHMSI engaged in unfair and deceptive conduct, including misleading Plaintiffs regarding the criteria for modification and the status of their modification application. These allegations are sufficient to state a plausible claim under Chapter 93A. Plaintiffs also sufficiently allege damages, such as fees incurred to avoid foreclosure and harm to Plaintiffs' credit.[49] Accordingly, AHMSI's motion to dismiss Count V is denied as to Plaintiffs' HAMP-related allegations.

IV.   Conclusion

For the foregoing reasons, AHMSI's Motion to Dismiss [#7] is ALLOWED IN PART and DENIED IN PART. Dismissal is ALLOWED as to Counts I, II, III (ordinary negligence), and V (Fremont claim). Dismissal is DENIED as to Counts III (negligent misrepresentation), IV (promissory estoppel), and V (HAMP-related claims).


AN ORDER HAS ISSUED.


                                                    /s/ Joseph L. Tauro
                                               United States District Judge

_____

Supp. 2d 255, 263 (D. Mass. 2011).

[48] Markle v. HSBC Mortg. Corp. (USA), 844 F. Supp. 2d 172, 186 (D. Mass. 2011) (citing Bosque v. Wells Fargo Bank, 762 F. Supp. 2d 342, 353-54 (D. Mass. 2011); In re Bank of Am. Home Affordable Mortg. Program (HAMP) Contract Litig., No. 10-02193-RWZ, 2011 WL 2637222, at *5 (D. Mass. July 6, 2011); Blackwood v. Wells Fargo Bank, No. 10-10483-GJD, 2011 WL 1561024, at *4 (D. Mass. Apr. 22, 2011)).

[49] Bosque, 762 F. Supp. 2d at 354.